**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**LAURA LUCERO Y RUIZ DE GUTIERREZ,**
**as mother and parent of Minor child M.B.,**

      **Plaintiff,**

**vs.**                             **No. 18 CV 00077 JAP/KBM**

**ALBUQUERQUE PUBLIC SCHOOLS,**
**MICKEY LOZANO,**
**Albuquerque Public Schools employee/officer,**
**individually acting under color of law,**
**ROY G. DENNIS,**
**Albuquerque Public Schools employee/officer,**
**individually acting under color of law,**
**THE BOARD OF COUNTY COMMISSIONERS**
**FOR THE COUNTY OF BERNALILLO, and**
**MANUEL GONZALES, Bernalillo County Sheriff,**
**individually and in his official capacity,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**APS DEFENDANTS' MOTION TO DISMISS**

      Defendants, Albuquerque Public Schools (APS), Mickey Lozano (Lozano), and Roy G.

Dennis (Dennis) (together, APS Defendants) move to dismiss the claims in PLAINTIFF'S

FIRST AMENDED COMPLAINT (Doc. No. 19) (FAC). See APS DEFENDANTS' MOTION

TO DISMISS NO. I: DISMISSAL FOR LACK OF PROPER SERVICE, OR

ALTERNATIVELY, DISMISSAL OF PLAINTIFF'S NMTCA CLAIMS BASED UPON

STATUTE OF LIMITATIONS, DISMISSAL OF PLAINTIFF'S FOURTEENTH

AMENDMENT CLAIMS, AND DISMISSAL OF CLAIMS AGAINST MICKEY LOZANO

FOR LACK OF PERSONAL PARTICIPATION (Doc. No. 26) (Motion). The Motion has been

fully briefed. See PLAINTIFF'S RESPONSE TO APS DEFENDANTS' MOTION TO DISMISS (Doc. No. 33) (Response); and APS DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO APS DEFENDANTS' MOTION TO DISMISS NO. I (Doc. No. 35) (Reply). The Court will grant the Motion in part and will dismiss Count One against APS Defendants. The Court will dismiss Counts Two and Three[1] against Defendant Lozano only.

     I.     PROCEDURAL AND FACTUAL BACKGROUND

     A.     Factual Background

Plaintiff alleges that on September 30, 2014, her minor son, M.B., who suffers from Autism,[2] was instructed by the Adaptive Physical Education Teacher at his school to "go inside after he ran his last lap." (FAC ¶ 41.) Mrs. Orona stopped M.B. and told him "that he had to wait for a staff member before going to class." (*Id.* ¶ 42.) This incident led to "MB exhibiting his documented 'shutting down' behavior in his classroom, leading to frustration in trying to resolve the incident." (*Id.*) M.B. then "told his teacher that he was walking home from school and proceeded to leave Jimmy Carter Middle School." (*Id.* ¶ 43.) The teacher was unable to reach Plaintiff on her cell phone and left a message that M.B. "had left campus." (*Id.* ¶ 44.) Plaintiff sent a text message to an aid, Crystal Holtz, "asking that the aid contact the teacher." (*Id.* ¶ 45.) Plaintiff and her husband "were informed that Defendant Dennis was looking for" M.B. (*Id.* ¶ 46.) The aid contacted the teacher and "was told that the teacher was in radio communication with Defendant Dennis. The teacher also informed Ms. Holtz that [M.B.] was running from security." (*Id.* ¶ 47.) Ms. Holtz received a call from another teacher stating that M.B. "had just crossed Coors on Central and was headed east." (*Id.* ¶ 48.) Ms. Holtz turned onto Central from

---

[1] After alleging a "Count One" and a "Count Two" on page 11 of the FAC, on page 12 Plaintiff alleges a "Cause of Action No. III," which presumably, was intended to be "Count Three."

[2] Autism is "a pervasive developmental disorder of children, characterized by impaired communication, excessive rigidity, and emotional detachment[.]" http://www.dictionary.com/browse/autism?s=t (last visited July 10, 2018).

Unser in her car, and when Ms. Holtz saw an APS police car turning into a parking lot, she followed. (*Id.* ¶ 49.) "The officer drove through the parking lot on the east side of the lot, using his police lights and running through the light." (*Id.*) After proceeding through the light, Ms. Holtz noticed that M.B. was "running at approximately 61st street." (*Id.* ¶ 50.) It was at this time that Defendant Dennis allegedly "utilized a tazer (sic) on MB." (*Id.* ¶ 51.) Ms. Holtz yelled to M.B., "who eventually ran to her car." (*Id.* ¶ 53.) M.B. was "shaken and terrified. He was afraid to return to school." (*Id.* ¶ 54.) M.B. informed Plaintiff that Defendant Dennis "shot 'something at me and I saw wires.' The wire hit and shocked MB on his leg." (*Id.* ¶ 55.)

On October 1, 2014, Plaintiff took M.B. to his primary care provider, who documented M.B.'s injuries. (*Id.* ¶ 59.) On October 2, 2014, a meeting was held at the school, and Plaintiff reported the incident to Mary Trace, an administrator at the school. (*Id.* ¶ 60.) On October 7, 2014, Officer Jeff Jones of the Albuquerque Police Department (APD) called Plaintiff at home "to let her know that he wanted to look at M.B.'s injury while M.B. was at school." (*Id.* ¶ 61.) When Plaintiff objected, Jones stated his call was "just a courtesy, that he goes to schools to do this all of the time when parents are not there." (*Id.* ¶ 62.) Plaintiff then contacted Kendra Morrison, the family advocate, and they both went to the school to be with M.B., and "[t]his visit resulted in a photo being taken by detective Lozano of APD via his cell phone, 8 days after the alleged taser incident." (*Id.* ¶ 63.) This photo was taken in the nurse's office "without any medical professional there to assist in the exam." (*Id.* ¶ 64.)

On October 9, 2014, "a safe house interview was scheduled at All Faith (sic) Receiving home." (*Id.* ¶ 65.) On October 9, 2014, "Defendant Jones, [3] an employee of APD and Mickey Lozano of APS interviewed M.B. without reasonable accommodations for his disabilities, and

_____

[3] Although Jeff Jones was originally named as a Defendant, he has been removed from the caption because there were no claims asserted against him in the FAC.

refused the presence of a parent, therapist, advocate or attorney." (*Id.* ¶ 66.) From approximately 6:20 pm to 7:00 pm, M.B. "was then taken off site from All Faiths Receiving Home to the site of the incident." (*Id.* ¶¶ 68–69.) "M.B. was fearful because of his recent officer tazing (sic). He was given no rights by Jones." (*Id.* ¶ 70.)

"On November 14, 2014, another meeting was held at Jimmy Carter Middle School. Defendant Dennis returned to work but was issued a no contact order for MB." (*Id.* ¶ 71.) On November 25, 2014, a personal attorney for Defendant Dennis "sent letters to Plaintiff Gutierrez, the family advocate Kendra Morrison, Katie Stone and Javier Benavidez, indicating that the investigation was complete and that [M.B.] had 'falsely alleged' the tazing (sic)." (*Id.* ¶ 72.) The letter referred to "an APS report by Defendant Jones." (*Id.* ¶ 73.) "Plaintiff Gutierrez has requested those documents from APD, but APD has refused to produce such documents." (*Id.*)

On December 16, 2015, Sheriff Gonzales "was notified that Plaintiff Gutierrez was concerned with the oversight of the MOU between BCSO and APS." (*Id.* ¶ 74.) "This notification included concerns that the commissioning MOU was not being followed, training was insufficient, and supervision was lacking." (*Id.*)

On December 28, 2015, Plaintiff received a phone call from a representative of the Bernalillo County Sheriff's Office, who requested a meeting. (*Id.* ¶ 75.) At the meeting, Plaintiff received a memo and a police report, neither of which had any information regarding Defendant Dennis. (*Id.*) Plaintiff "asked about training and consequences and what could be done about monitoring individuals such as APS employee Dennis." (*Id.*) Since the incident, M.B., "has been emotionally and psychologically unable to return to school. He has been diagnosed with PTSD and has a recommendation against any return to public school." (*Id.* ¶ 76.) M.B. will turn 18 years old at the end of 2018.

B.        Procedural Background

On September 29, 2017, Plaintiff pro se filed CIVIL COMPLAINT NM TORT CLAIMS ACT CIVIL RIGHTS 1983 (Doc. No. 1-1) (Original Complaint) in the Second Judicial District Court, Bernalillo County, New Mexico. At that time, none of the Defendants were served with the Original Complaint. On January 25, 2018, after learning about this lawsuit in late December 2017, the Board of County Commissioners for the County of Bernalillo (County) removed the case to this Court. See NOTICE OF REMOVAL (Doc. No. 1).[4] On January 30, 2018, the County moved to dismiss on a variety of technical bases. DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS IN LIEU OF AN ANSWER (Doc. No. 3) (County's Motion to Dismiss).

After the removal and the filing of the County's Motion to Dismiss, Plaintiff sought the assistance of counsel. Plaintiff's counsel filed a motion for extension of time to respond to the County's Motion to Dismiss. The parties conferred regarding the procedural issues related to this case in which a defendant removed the case before service of process.[5] After conferring, the parties agreed "that a brief period of time should be afforded" to assess the case and either respond to the County's Motion to Dismiss or file an Amended Complaint. (Resp. at 4.)

On March 6, 2018, Plaintiff filed PLAINTIFF'S MOTION TO AMEND COMPLAINT (Doc. No. 15). Chief Magistrate Judge Karen B. Molzen granted Plaintiff's request. See Text Docket Entry No. 18 (Mar. 23, 2018). On March 23, 2018, Plaintiff filed the FAC. On March 26, 2018, the Court entered the ORDER DENYING DEFENDANTS' MOTION TO DISMISS AS MOOT (Doc. No. 20). After conferring about service of the FAC, the County agreed to waive service. Sheriff Gonzales filed a waiver of service (Doc. No. 22).

---

[4] The County received a copy of the original Complaint "in the last days of December" but was not formally served. NOTICE OF REMOVAL (Doc. No. 1 at 3.)
[5] Under 28 U.S.C. § 1446(b), the notice of removal must be filed within 30 days "after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]"

Plaintiff served the FAC on APS Defendants on March 27, 2018. (Doc. Nos. 23, 24, & 25.)

## II. STANDARD OF REVIEW

### A. Insufficient Service of Process

APS Defendants first contend that they were not properly served with the Original Complaint. Rule 12(b) provides that "a party may assert the following defenses by motion: … (4) insufficient process; [and] (5) insufficient service of process."[6] "In determining the validity of service before removal, a federal court must apply the law of the state under which the service was made." *Johnson v. N.T.I., a Div. of Colorado Springs Circuits*, 898 F.Supp. 762, 765 (D.Colo. 1995) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1082 (1987)). Consequently, this Court must apply New Mexico law to evaluate the validity of service of the Original Complaint prior to removal. *Executive Consulting, Inc. v. Kilmer*, 931 F. Supp. 2d 1139, 1140 (D.N.M. 2013). Under NMRA 1-004(C)(2), "[s]ervice of process shall be made with reasonable diligence." The New Mexico rule does not provide a specific number of days in which service must be completed. *Id.*

After the case was removed, the Federal Rules of Civil Procedure governed service of process. See Fed. R. Civ. P. 81(c) ("[t]hese rules apply to a civil action after it is removed from a state court."). Rule 4(m) allows a plaintiff 90 days after a complaint is filed in federal court to complete service, and the rule has also been interpreted to give plaintiffs in removed cases 90 days after the date of removal to complete service. *Baumeister v. New Mexico Comm'n for the Blind*, 409 F. Supp. 2d 1351, 1352 (D.N.M. 2006) (citing *Ritts v. Dealers Alliance Credit Corp.*,

---

[6] Rule 12(b)(5) is a more accurate basis for Defendant's motion as it challenges the sufficiency of the service of process, i.e., the mode of delivery or the lack of delivery of the summons and complaint. *Bruce v. United Parcel Servs., Inc.*, CIV-07-226-C, 2007 WL 4208715, at *1 (W.D. Okla. Nov. 26, 2007) (unpublished) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (3d ed. 2004)).

989 F. Supp. 1475, 1478 (N.D. Ga. 1997) (and cases cited therein)). Similarly, a federal statute allows additional time for a plaintiff to cure defective service after removal. *See* 28 U.S.C. § 1448.

### B. Statute of Limitations

APS Defendants also argue that all claims should be dismissed because they were filed after the statute of limitations deadline had passed. "The defense of the statute of limitations may be raised by motion to dismiss where it is clearly apparent on the face of the pleading that the action is barred." *See Apodaca v. Unknown Heirs of Following Persons Who Are Adjudged to be Owners and Proprietors of Tome Land Grant*, 1982-NMSC-100, ¶ 14, 98 N.M. 620, 651 P.2d 1264.

### C. Failure to State a Claim

APS Defendants seek dismissal for failure to state a claim under Rule 12(b)(6). The nature of a rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "At the motion-to-dismiss stage, [a court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2014). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Thomas v. Kaven*, 765 F.3d 1183, 1190–91 (10th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III. DISCUSSION

### A. Service of Process

APS Defendants argue that under Fed. R. Civ. P. 4(m), Plaintiff was required to serve them with the Original Complaint within 90 days after September 29, 2017, the date the Original

Complaint was filed. APS Defendants ask the Court to dismiss all claims against them because Plaintiff failed to serve them with the Original Complaint by December 28, 2017, which is 90 days after September 29, 2017. In response, Plaintiff correctly argues that because the Original Complaint was filed in state court, New Mexico rules apply to service of the Original Complaint. *Johnson*, 898 F.Supp. at 765. Under NMRA 1-004(C)(2), service must be accomplished "with reasonable diligence." The rule contains no "drop dead" date. *Baumeister*, 409 F.Supp.2d at 1354. In other words, the rule does not establish a specific deadline by which service must be accomplished. *Green v. Bank of America*, N.A., No. 13 CV 00937 JAP/KBM, 2013 WL 11336861, *2 (D.N.M. Nov. 8, 2013) (unpublished) (citing *Baumeister*).

APS Defendants further argue that after removal Plaintiff did not serve them with the FAC until March 29, 2017, which was six months after the Original Complaint was filed. Moreover, APS Defendants assert that Plaintiff's filing of the FAC in federal court cannot restart the 90-day service clock applicable in this Court. Defendants cite *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129 (10th Cir. 2006), which held that under the previous version of Rule 4(m) allowing 120 days for service of the complaint, when a plaintiff amends a complaint, the time for service under Rule 4(m) is restarted only as to newly added defendants. *Id.* at 1148–49 (stating, "the 120–day period provided by Rule 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint. … This construction of the rule prevents the plaintiff from repeatedly filing amended complaints to extend the time for service indefinitely[.]"). Notably, however, the complaint in *Bolden* was originally filed in federal court. In contrast, this case was removed from state court; hence, federal statutory law changed the dynamic of service after removal:

> In all cases removed from any State court to any district court of the United States
> in which any one or more of the defendants has not been served with process or in
> which the service has not been perfected prior to removal, or in which process
> served proves to be defective, such process or service may be completed or new
> process issued in the same manner as in cases originally filed in such district
> court.

28 U.S.C.A. § 1448. Under 28 U.S.C. § 1448, the 90-day time limit for service begins to run on the date of removal.

In *Baumeister v. New Mexico Com'n for the Blind*, the plaintiff had failed to properly serve the defendants in state court prior to removal. The court decided that under 28 U.S.C. § 1448, the plaintiff, after removal, had the full number of days provided in Rule 4(m) to serve all defendants. 409 F.Supp.2d 1351, 1353 (D.N.M. 2006). "I find that 28 U.S.C. § 1448 gives me the discretion to allow Plaintiffs 120 days [under previous version of Rule 4(m)] from the date of removal to perfect service." *Id.* at 1355. Although *Baumeister* illustrates the re-starting of the service clock on removal, here Plaintiff moved to amend her Original Complaint after removal; therefore, the Court must analyze this situation under both the *Bolden* and the *Baumeister* standards.

First, the Court notes that service of the Original Complaint was not necessarily defective under the New Mexico rules because New Mexico Rule 1-004(C)(2) directs that service of process must be made "with reasonable diligence." The APS Defendants do not address whether Plaintiff employed reasonable diligence while this case was pending in state court. APS Defendants have merely assumed that service must be made in a removed case within 90 days of the original filing in state court without accounting for the difference in the service rules in state and federal court. Moreover, under 28 U.S.C. § 1448, upon removal of this case on January 25, 2018, the 90-day limit in Rule 4(m) applied "in the same manner as in cases originally filed in"

this Court. Therefore, at the time of removal and before the FAC was filed, Plaintiff had to serve the Original Complaint on the APS Defendants by April 25, 2018.

After removal, Plaintiff moved to amend the Original Complaint, and her motion was granted. The FAC was filed on March 23, 2018, and Plaintiff served the APS Defendants with the FAC on March 27, 2018. Under *Bolden*, when the FAC was filed, the service clock in Rule 4(m) did not re-start as to the APS Defendants because they were not "newly added" in the FAC. *Bolden*, 441 F.3d at 1148–49. Thus, Plaintiff was required to serve the APS Defendants with the FAC by April 25, 2018. And, Plaintiff did serve the APS Defendants before that deadline. *See Baumeister*, 409 F.Supp.2d at 1352 (holding that Rule 4(m) and 28 U.S.C. § 1448 allow plaintiffs in removed cases the full amount of time allowed in federal court to serve defendants in removed case).

 Therefore, since Plaintiff timely served APS Defendants with the FAC, the Motion to dismiss all claims for insufficient service of process will be denied.

B.      Statute of Limitations

Counts One and Two are governed by the three year statute of limitations applicable to 42 U.S.C. § 1983 claims; therefore, the claims are barred if filed after September 30, 2017. *See Jackson v. City of Bloomfield*, 731 F.2d 652, 654 (10th Cir. 1984) ("We will henceforth apply the New Mexico three-year statute [of limitations] for an injury to the person to all section 1983 actions arising in that state."). APS Defendants argue that despite the September 29, 2017 filing of the Original Complaint, Counts One and Two are nevertheless barred by the statute of limitations. APS Defendants reason that they were never served with the Original Complaint and service of the FAC did not cure the original improper service. However, APS Defendants did not convince this Court that Plaintiff's failure to serve them with the Original Complaint was fatal to

Plaintiff's claims. Since, after removal, the FAC was properly served within the deadline set forth in Rule 4(m), Plaintiff cured any ineffective service of the Original Complaint. Therefore, Counts One and Two are not barred by the statute of limitations.

APS Defendants further argue that Plaintiff's claim in Count Three under the New Mexico Tort Claims Act (NMTCA), NMSA 1978 §§ 41-4-1 et seq., is barred by the applicable two-year statute of limitations. The NMTCA provides:

Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file. This subsection applies to all persons regardless of minority or other legal disability. NMSA § 41-4-15(A). According to APS Defendants, the statute of limitations on Plaintiff's NMTCA claim expired on September 30, 2016; therefore, the Count Three NMTCA claim brought in state court one year after the expiration date, is barred and must be dismissed.

In the Response, Plaintiff maintains that her NMTCA claim did not accrue on September 30, 2014 because at that time M.B. was a minor and legally incapacitated. First, Plaintiff points to the New Mexico general three-year statute of limitations for tort claims.[7] Although Plaintiff recognizes that this particular provision does not directly govern NMTCA claims, Plaintiff maintains that the related tolling provision for minors in NMSA § 37-1-10 should apply here. Section 37-1-10 states that a minor or incapacitated person is permitted one year after the end of his incapacity to file suit. (Resp. at 14.) *See Romero v. N.M. Envtl. Dep't*, 1988-NMSC-073, ¶ 14, 107 N.M. 516, 760 P.2d 1282, 1286 (holding that statutory predecessor to NMTCA, NMSA

---

[7] "Actions must be brought … for an injury to the person or reputation of any person, within three years." NMSA 1978 § 37-1-8.

1953, § 23-1-8 had a three-year statute of limitations for a minor's action against the state and that predecessor tolling statute, NMSA 1953 § 23-1-10, applied to minor's cause of action against state health official). However, no court has held that the general statute of limitations for torts or the related tolling provision applies to NMTCA claims brought on behalf of minors.

Plaintiff next asserts that New Mexico recognizes equitable tolling when circumstances beyond the plaintiff's control preclude filing suit within the statute of limitations. (Resp. at 17.) Plaintiff proposes that the two-year period for bringing NMTCA claims should be equitably tolled while M.B. is a minor.

In the Reply, APS Defendants argue that neither § 37-1-10 nor equitable tolling can save Plaintiff's NMTCA claim. And Defendants argue that the plain language of the NMTCA precludes tolling of the NMTCA statute of limitations: "[t]his subsection applies to all persons regardless of minority or other legal disability." NMSA 1978 § 41-4-15(A).

In *Jaramillo v. Board of Regents of the Univ. of N.M. Health & Sciences Center*, 2001-NMCA-024, ¶ 10, 23 P.3d 931, the New Mexico Court of Appeals held that the two-year statute of limitations in the NMTCA did not apply to the plaintiff's minor son, who was injured as an infant, because to do so would violate his due process right to seek redress from the courts. "[A]s a matter of due process, a child who is incapable of meeting a statutory deadline cannot have that deadline applied to bar the child's right to legal relief." *Id. See also K.S. by and through her parents and next friend T.S. next friend A.R. v. Santa Fe Public Schools*, No. 14 CV 385 SCY/KBM, 2015 WL 13662572, at * 7 (D.N.M. June 11, 2015) (denying motion to dismiss under NMTCA statute of limitations and finding that ten-year-old student molested by teacher was not reasonably capable of complying with the statutory limitations under NMTCA). New Mexico courts have allowed tolling of the NMTCA statute of limitations in some instances.

Courts focus on the specific facts of each case and "whether a reasonable person in that child's position would be capable of meeting the notice or limitations requirements." *K.S.*, 2015 WL13662572, at * 7. *See also Campos v. Murray*, 2006-NMSC-020 ¶ 11, 139 N.M. 454 ("... an eleven-year-old, [is] ... unable to comply with the statute of limitations requirement at such a young age.").

At the time of the incident in September 2014, M.B. was either a thirteen- or fourteen-year-old middle school student with Autism. The APS Defendants' argument, which is based on the plain statutory language, ignores the case law applying due process principles to protect minors who are incapable of meeting the NMTCA statutory deadline. Because APS Defendants have failed to convince the Court that this claim is barred as a matter of law, the Court will deny the Motion as to Count Three.

      C.      Failure to State a Claim

            1.      Count One: Procedural Due Process Claim

In Count One, Plaintiff asserts a claim under § 1983 for the violation of M.B.'s procedural due process right to freedom from bodily restraint and corporal punishment at school. APS Defendants argue that Count One must be dismissed because it asserts the improper standard and is duplicative of Plaintiff's Count Two claim for violation of M.B.'s Fourth Amendment rights. APS Defendants maintain that the alleged tasing of M.B. should be analyzed under the "unlawful arrest and excessive force" rubric applying the Fourth Amendment's reasonableness standard because the incident occurred while M.B. "was at liberty and prior to any type of arraignment." (Mot. at 12.) In other words, APS Defendants place this case into a Fourth Amendment category of unlawful arrest and use of excessive force, and not in the Fourteenth Amendment category of corporal punishment or school discipline. In response,

Plaintiff argues that she should be allowed to plead these claims in the alternative because this incident implicates both Fourth Amendment and Fourteenth Amendment concerns depending on whether the Defendant Dennis is considered an APS employee or a law enforcement officer. It appears that Plaintiff is arguing that if Defendant Dennis is an APS employee, Plaintiff's claim would fall under the Fourteenth Amendment; but if Defendant Dennis is a police officer, M.B.'s Fourth Amendment rights are implicated.

The Court believes that instead of analyzing this case according to whether Defendant Dennis was a law enforcement officer or an APS employee, the case should be analyzed according to the nature of the incident itself. Here we have a student who left campus without permission. M.B. was pursued by school personnel, including Defendant Dennis, an APS security officer. The Court can reasonably infer from the facts that the purpose of the pursuit and alleged tasing was to stop M.B. from running through the streets of Albuquerque and was not to inflict punishment or school discipline. The alleged tasing occurred off-campus after a foot and car chase through the streets of Albuquerque and a parking lot. The Court finds that under the allegations in the FAC this case implicates M.B.'s Fourth Amendment right to be free from unreasonable seizures and excessive force.

However, even if this case were viewed through the lens of school discipline and corporal punishment, the claim would be dismissed under standards set forth in Fourteenth Amendment case law. "A person alleging that he 'has been deprived of his right to procedural due process' must prove two elements: that he possessed a constitutionally protected liberty or property 'interest such that the due process protections were applicable,' and that he was not 'afforded an appropriate level of process.'" *Zwygart v. Board of County Comm'rs of Jefferson County, Kan.*, 483 F.3d 1086, 1093 (10th Cir. 2007) (quoting *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131,

1135 (10th Cir. 1994)). In *Ingraham v. Wright*, 430 U.S. 651 (1977), the Supreme Court held a student's Fourteenth Amendment liberty interest was implicated when a school imposes corporal punishment that "inflict[s] appreciable physical pain." *Id.* at 673–74. The Court stated that "[i]t is fundamental that the state cannot hold and physically punish an individual except in accordance with due process of law." *Ingraham*, 430 U.S. at 683.

There is, of course a de minimis level of imposition with which the Constitution is not concerned. But at least where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, Fourteenth Amendment liberty interests are implicated. *Id.*

The Court finds that if this is a case of school punishment, M.B. was not subjected to a de minimis level of imposition. *Cf. Ebonie S. v. Pueblo Sch. Dist. 60*, 695 F.3d 1051, 1058 (10th Cir. 2012) (upholding dismissal of procedural due process claim based on restraint of mentally disabled child in a three-sided desk was de miminis level of imposition and did not implicate due process liberty interest); and *Couture v. Board of Educ. of Albuquerque Public Schools*, 535 F.3d 1243, 1257 (10th Cir. 2008) (repeated time-outs did not implicate liberty interest). And, for purposes of this analysis, the Court will have to infer that M.B. was tased in response to his misbehavior, i.e. leaving school without permission and running away from school and security personnel. Therefore, the tasing of M.B. implicated his liberty to be free from appreciable physical pain through corporal punishment.

The *Ingraham* court held that despite its finding that painful corporal punishment implicated a student's liberty interests, prior notice and a hearing were not required under those circumstances. *Ingraham*, 403 U.S. at 680. Instead, the court determined that the availability of post-deprivation state-law remedies satisfied due process. *Id.* at 675–82. *See Clayton v. Tate*

*County School Dist.*, 560 F. Appx 293, 297 (5th Cir. 2014) (upholding dismissal of Fourteenth Amendment claim brought by parent of child corporally punished through paddling because Mississippi provided a post-deprivation civil or criminal remedy). The *Ingraham* court reasoned that "[t]eachers and school authorities are unlikely to inflict corporal punishment unnecessarily or excessively when a possible consequence of doing so is the institution of civil or criminal proceedings against them." *Ingraham*, 430 U.S. at 672. Although the *Ingraham* court recognized that prior notice and a hearing might provide additional safeguards to students, the court did not impose such a blanket requirement because it would substantially reduce the effectiveness of school punishment by causing significant delay. *Id.* at 681. Hence, the *Ingraham* court held that the procedural due process was satisfied by a state's common law tort remedies that were available after an incident of corporal punishment. *Id.* at 683.

As mentioned, if the alleged tasing is considered corporal punishment, it certainly implicated M.B.'s due process liberty interest because M.B. was subjected to "appreciable physical pain." However, as the Supreme Court held in Ingraham, prior notice and a hearing were not required because adequate civil remedies are available to redress M.B.'s injury. *See Clayton*, 560 F. Appx at 297 (holding that "as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment, whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage") (citing *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)). In sum, this Court concludes that as a matter of law Plaintiff has failed to state a claim for the violation of M.B.'s procedural due process rights under the Fourteenth Amendment, and the Court will dismiss Count One against APS Defendants.

## 2. Count Two: Unreasonable Search and Seizure

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." (*Id.* ¶ 83) (quoting U.S. Const. amend. IV).[8] In Count Two, Plaintiff asserts that the APS Defendants "unlawfully used excessive force against M.B. unreasonably without probable cause to do so, harming M.B. both mentally and physically." (*Id.* ¶ 85.) And Plaintiff alleges that "[a] law enforcement officer's use of excessive force constitutes a seizure within the meaning of the Fourth Amendment." (*Id.* ¶ 86.) Finally, Plaintiff contends that "Defendants' violation of Plaintiffs' (sic) Fourth Amendment rights has caused them (sic) substantial damages." (*Id.* ¶ 87.) The Court can infer from these allegations that Plaintiff's claim in Count Two is limited to the alleged tasing of M.B., which Plaintiff contends constituted a seizure through the use of excessive force in violation of M.B.'s Fourth Amendment rights.[9] Thus, as further explained below, the Court concludes that Plaintiff has stated a claim in Count Two only against Defendant Dennis, the only APS Defendant individually involved in the tasing.

## 3. Count Three: NMTCA Claim Against APS Defendants

Plaintiff claims that APS Defendants are liable under two sections of the NMTCA: NMSA § 41-4-6 and § 41-4-12. Section 41-4-6 waives governmental immunity for "damages resulting from bodily injury, wrongful death or property damage caused by the negligence of

---

[8] The Fourth Amendment applies to the States through the Fourteenth Amendment. (*Id.* ¶ 84) (citing *Camara v. Mun. Ct. of City & Cty of S.F.*, 387 U.S. 523, 528 (1967)).

[9] In order to determine whether using the taser was reasonable or excessive force, courts rely on the "objective reasonableness" standard articulated in *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The ultimate question 'is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.'" *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). *See Garcia v. Trujillo*, 11CV614 RHS/ACT, 2012 WL 13080100, at *6 (D.N.M. June 4, 2012) (determining that tasing of adult suspect during roadside stop for impaired driving was reasonable because arrestee "refused to move her legs inside the patrol car when repeatedly instructed to do so."). *See also Doporto v. Kim*, CV 10-145 JH/KBM, 2011 WL 13282965, at *5 (D.N.M. Nov. 23, 2011) (denying summary judgment to defendants who "deployed their taser against a man who at that time was offering no resistance and posed no threat.").

public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." Section 41-4-12 waives governmental immunity from "liability for personal injury, bodily injury, … resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties."

In Count Three, Plaintiff alleges these facts against APS, Bernalillo County, Bernalillo County Sheriff's Department,[10] Defendant Lozano, Defendant Dennis, and Sheriff Gonzales:

90.    The Defendants listed under this count intentionally and/or negligently failed to supervise and train the APS officers who initiated physical contact with the knowledge that they had no probable cause or other lawful authority to do so[.]

91.    Defendants [are] "law enforcement officers" for purposes of the New Mexico Tort Claims Act, and at all times relevant were acting within the course and scope of their duties.

92.    The facts available to the Defendants would not warrant a reasonable officer to believe that their actions were appropriate.

93.    Defendant APS, Bernalillo County, Bernalillo County Sheriff's Department and Sheriff Manuel Gonzales are directly responsible to Plaintiff for the negligent and/or intentional acts and omissions of their respective employees under the doctrine of respondeat superior.

94.    The Defendants listed under this count engaged in intentional, negligent, grossly negligent, and reckless acts and omissions, without just cause or excuse, and these Defendants knew, or should have known, were reasonably expected to result in injuries suffered by Plaintiff.

---

[10] As pointed out in BERNALILLO COUNTY DEFENDANTS' MOTION TO DISMISS BASED ON FAILURE TO STATE A CLAIM, STATUTE OF LIMITATIONS VIOLATIONS AND IMPROPER NAMING OF PARTIES IN LIEU OF AN ANSWER (Doc. No. 34), Plaintiff omitted the Bernalillo County Sheriff's Department as a Defendant in the FAC; therefore, to the extent Count Three attempts to assert a claim against the Sheriff's Department, it is subsumed into the claims against the Board of County Commissioners.

95.     The Defendants listed under this count breached a duty of care they owed to Plaintiff that resulted in the deprivation of his rights and physical/emotional harm.

96.     Defendant APS, Bernalillo County, Bernalillo County Sheriff's Department and Sheriff Manuel Gonzales breached further duties to Plaintiff and committed the tort(s) of negligent hiring, supervision, training, discipline, and retention.

97.     The Defendants listed under this count engaged in acts and omissions which resulted in the unlawful use of excessive for[ce] causing physical or mental harm and/or deprivation of rights, privileges and immunities secured by the constitutions and laws of the United States and New Mexico, and caused Plaintiff to be deprived of rights, privileges and immunities secured by the constitutions and laws of the United States and the State of New Mexico.

98.     Defendants APS, Bernalillo County, Bernalillo County Sheriff's Department and Sheriff Manuel Gonzales had duties to act reasonably in order to avoid injuries and deprivations of rights resulting from unsafe or dangerous conditions created by inadequate or improper policies and procedures.

99.     Defendants APS, Bernalillo County, Bernalillo County Sheriff's Department and Sheriff Manuel Gonzales each had a duty to supervise its employees, contractors and agents in order to ensure that they did not act negligently, grossly negligently, or recklessly in the operation or maintenance of their respective offices.

100.    Defendants violated Plaintiff's rights and caused physical/mental harm to Plaintiff's son knowing that they had no lawful basis to do so.

101.    Defendants APS, Bernalillo County Sheriff's Department and Sheriff Manuel Gonzales failed to implement appropriate policies and procedures regarding employee training, oversight of employees, discipline of employees, use of force on students, and other such policies and procedures as are reasonably necessary to ensure that Plaintiff would not be subjected to the tortious conduct described herein.

102.    Defendants conduct, described above, including the intentional, grossly negligent, and reckless acts and omissions, was the direct and proximate cause of the injuries and damages suffered by Plaintiff, as set forth herein.

(FAC ¶¶ 90–102.) In the Motion, APS Defendants argue that Counts Two and Three should be

dismissed only against Defendant Lozano. APS Defendants do not argue that Counts Two and

Three should be dismissed against APS or Defendant Dennis. Therefore, the Court finds that the allegations in Count Three state claims against APS and Defendant Dennis.

4.      Counts Two and Three: Defendant Lozano

APS Defendants ask the Court to dismiss all claims against Defendant Lozano because: (1) Defendant Lozano did not participate in the alleged tasing of M.B.; (2) Plaintiff does not allege that Defendant Lozano was responsible for Defendant Dennis' actions due to a failure to supervise of train; and (3) there are no facts supporting an allegation that Defendant Lozano's negligence caused Defendant Dennis' actions.[11] (Mot. at 13–14.) Since the Court has dismissed Count One against all APS Defendants, the Court will address only whether Plaintiff has stated claims in Counts Two and Three against Defendant Lozano.

"It is axiomatic that, to prevail on a damages claim for a constitutional violation pursuant to § 1983, the plaintiff must show that the defendant, acting under color of state law, 'personally participated in the alleged violation.'" *Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007). Plaintiff's only factual allegations against Defendant Lozano were that he took pictures of M.B.'s injuries at the school "8 days after the original incident" (FAC ¶ 63) and he questioned M.B. about the incident at a safe house "without reasonable accommodations for his disabilities, and refused the presence of a parent, therapist, advocate or attorney." (*Id.* ¶ 66.)

Although Count Two incorporates the allegations in all of the preceding paragraphs, Plaintiff merely asserts injury through the use of "excessive force … harming M.B. both mentally and physically." (FAC ¶ 85.) Count Two clearly relates only to the alleged tasing. Since

---

[11] *See Ortiz v. New Mexico State Police,*1991-NMCA-031, ¶ 4, 112 N.M. 249, 814 P.2d 117 (stating, "Several decisions by the New Mexico Supreme Court make clear that a law enforcement officer need not personally commit a listed tort for the officer's conduct to come within the waiver of Section 41–4–12. It suffices that the law enforcement officer, while acting within the scope of duty, negligently or intentionally causes the commission of a listed tort by another person."), cert. quashed, 113 N.M. 352 (1992).

there are no allegations that Defendant Lozano participated in the alleged tasing, the Court will dismiss Count Two against Defendant Lozano.

Defendant Lozano is specifically named in the caption of Count Three, but the factual allegations in Count Three relate only to the alleged tasing with references to "physical contact" and "excessive force." (FAC ¶¶ 90, 97.) There are simply no allegations in Count Three that support NMTCA claims against Defendant Lozano for his photographing and questioning of M.B. In addition to the tasing, Count Three alleges that supervisors or policy makers were responsible for Defendant Dennis' actions. However, no allegation ties Defendant Lozano to any supervisory or policy decisions governing Defendant Dennis. Consequently, Count Three must be dismissed against Defendant Lozano because Plaintiff did not allege that Defendant Lozano negligently caused the alleged use of excessive force, or negligently supervised Defendant Dennis.

IT IS ORDERED that DEFENDANTS' MOTION TO DISMISS NO. I: DISMISSAL FOR LACK OF PROPER SERVICE, OR ALTERNATIVELY, DISMISSAL OF PLAINTIFF'S NMTCA CLAIMS BASED UPON STATUTE OF LIMITATIONS, DISMISSAL OF PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS, AND DISMISSAL OF CLAIMS AGAINST MICKEY LOZANO FOR LACK OF PERSONAL PARTICIPATION (Doc. No. 26) is granted as follows:

1. Count One is dismissed as to the APS Defendants;

2. Count Two is dismissed as to Defendant Lozano only; and

3. Count Three is dismissed as to Defendant Lozano only.

_____
SENIOR UNITED STATES DISTRICT JUDGE