UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

LAURA LUCERO Y RUIZ DE GUTIERREZ,
as mother and parent of Minor child M.B.,

    Plaintiff,

vs.                               No. 18 CV 00077 JAP/KBM

ALBUQUERQUE PUBLIC SCHOOLS,
MICKEY LOZANO,
Albuquerque Public Schools employee/officer,
individually acting under color of law,
ROY G. DENNIS,
Albuquerque Public Schools employee/officer,
individually acting under color of law,
THE BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF BERNALILLO, and
MANUEL GONZALES, Bernalillo County Sheriff,
individually and in his official capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING APS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO I

In APS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. I:

DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT CLAIM ON THE BASIS OF

QUALIFIED IMMUNITY AND DISMISSAL OF PLAINTIFF'S NMTCA CLAIM BASED

UPON THE STATUTE OF LIMITATIONS AND LACK OF EVIDENCE (Doc. No. 49)

(Motion), the APS Defendants (Albuquerque Public Schools and Roy G. Dennis) ask the Court

to dismiss Counts Two and Three of PLAINTIFF'S FIRST AMENDED COMPLAINT (Doc.

No. 19) (FAC) the only remaining counts in the FAC.[1] The Motion is fully briefed. *See* PLAINTIFF'S RESPONSE TO APS DEFENDANTS MOTION FOR SUMMARY JUDGMENT NO. I: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT CLAIM ON THE BASIS OF QUALIFIED IMMUNITY AND DISMISSAL OF PLAINTIFF'S NMTCA CLAIM BASED UPON THE STATUTE OF LIMITATIONS AND LACK OF EVIDENCE (Doc. No. 55) (Response) and APS DEFENDANTS' REPLY TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT NO. I (Doc. No. 57) (Reply). Because Plaintiff's son M.B. did not stop in response to being chased and allegedly having been tased by APS School Resource Officer Roy G. Dennis (Officer Dennis), there was no "seizure." Therefore, Officer Dennis did not violate M.B.'s Fourth Amendment rights, and the Court will grant summary judgment in favor of APS Defendants on Plaintiff's Count Two claim. Furthermore, because Plaintiff and M.B. were represented by legal counsel during the weeks following the incident, application of the two-year statute of limitations to Plaintiff's claims under the New Mexico Tort Claims Act (NMTCA) does not violate M.B.'s due process rights. Therefore, the Court will grant summary judgment dismissing Count Three[2] as well.

I. BACKGROUND

   A. The Incident

On September 30, 2014, Plaintiff's 13-year-old son M.B., who suffers from Autism, was a student at Jimmy Carter Middle School in Albuquerque, New Mexico. (FAC ¶ 41; Mot. UMF 1.) On that date, M.B.'s Adaptive Physical Education Teacher instructed him to "go inside after

---

[1] The Court has already dismissed Count I of the three-count FAC as to the APS Defendants. *See* MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART APS DEFENDANTS' MOTION TO DISMISS (Doc. No. 41).

[2] After alleging a "Count One" and a "Count Two" on page 11 of the FAC, Plaintiff alleges a "Cause of Action No. III" on page 12 of the FAC. For consistency, the Court will refer to Count III as "Count Three."

he ran his last lap." (*Id.*) Another teacher stopped M.B. and told him "that he had to wait for a staff member before going to class." (*Id.* ¶ 42.) M.B. then began to exhibit "his documented 'shutting down' behavior[.]" (*Id.*) M.B. "told his teacher that he was walking home from school and proceeded to leave Jimmy Carter Middle School." (*Id.* ¶ 43.) APS staff members and Officer Dennis began to search for M.B. by driving their vehicles on the streets near the school. (Mot. UMF 3.) The teacher was unable to reach Plaintiff on her cell phone and left a message that M.B. "had left campus." (FAC ¶ 44.) Plaintiff sent a text message to an aid, Crystal Holtz, asking her to "contact the teacher." (*Id.* ¶ 45.) Ms. Holtz contacted the teacher and "was told that the teacher was in radio communication with Defendant Dennis." (*Id.*) The teacher also informed Ms. Holtz that M.B. was "running from security." (*Id.* ¶ 47.) M.B. claimed that when Officer Dennis caught up with him, Officer Dennis "shot something at him and he saw wires." (Mot. UMF 5; FAC ¶ 55.) "The wire hit and shocked M.B. on the leg." (FAC ¶ 55.) M.B. did not stop after he was allegedly tased by Officer Dennis, but instead ran to and entered Ms. Holtz's vehicle. (*Id.* ¶ 53.)

      B.    The Aftermath

During the first two weeks in October 2014, Plaintiff consulted attorney Nancy Simmons regarding possible claims arising from the incident. In an October 7, 2014 telephone call between Plaintiff and a detective from the Albuquerque Police Department, Plaintiff stated that she and M.B. had retained Nancy Simmons as counsel, and Plaintiff informed the detective that he should coordinate with Ms. Simmons in setting up a forensic interview of M.B. (Mot. Ex. C (audio recording of call); Mot. Ex. D (transcript of call).) On October 16, 2014, however, Ms. Simmons sent a letter to Plaintiff declining to represent Plaintiff due to a heavy case load. (*See* Resp. Ex. 2.) On October 24, 2014, a tort claims notice under NMSA 1978 § 41-4-16, was

submitted on M.B.'s behalf by attorney Frances Crockett indicating that Plaintiff and M.B. intended to sue the Albuquerque Police Department, Albuquerque Public Schools, and Bernalillo County for M.B.'s injuries caused by the incident. (*See* Plf's Resp. to County Defs' Mot. to Dismiss Ex. 1 (Doc. No. 38-1).) Ms. Crockett also requested preservation of all public records related to the incident under NMSA 1978 § 14-2-1. (*Id.*) There is no information in the record as to when Ms. Crockett ceased her representation of Plaintiff and M.B.

On September 29, 2017, Plaintiff *pro se* filed the Complaint in the Second Judicial District Court, Bernalillo County, New Mexico. (*See* Doc. No. 1-1.) The case was removed to this Court on January 25, 2018. On February 13, 2018, Plaintiff's current counsel, Western Agriculture, Resource and Business Associates, LLP (A. Blair Dunn, Esq. and Dori E. Richards, Esq.) entered their appearances in this Court.[3]

 II. STANDARD OF REVIEW

  A. Summary Judgment Standard

Under Rule 56 a court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which the movant believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The movant may meet its burden by showing that the non-movant "failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322–323; *see*

---

[3] At that time, Plaintiff's counsel entered an appearance for Plaintiff only and moved to amend the original complaint. (*See* Doc. No. 15.)

4

*also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In response, the non-movant must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. At the summary judgment stage, the court draws "all inferences in favor of the nonmoving party to the extent supportable by the record[.]" *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court cannot find a material fact issue by adopting the unsupported version of the facts for purposes of ruling on a motion for summary judgment. *Id.* at 380 (ruling that summary judgment should have been granted on the basis of video evidence).

    B.  Qualified Immunity Standard

Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Once the qualified immunity defense is asserted, the plaintiff "bears a heavy two-part burden" to show, first, "the defendant's actions violated a constitutional or statutory right," and, second, that the right was "clearly established at the time of the conduct at issue." *Archuleta v. Wagner,* 523 F.3d 1278, 1283 (10th Cir. 2008) (internal quotation marks omitted).

A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196–97 (10th Cir. 2010) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining

whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

III. DISCUSSION

    A. Preliminary Matters

Local Rule 7.1 states that a "[m]ovant must determine whether a motion is opposed, and a motion that omits a recitation of a good-faith request for concurrence may be summarily denied." DNM L.R.-Civ. 7.1(a). Prior to filing the Motion, APS Defendants' counsel, Luis Robles, sent a letter by email to Plaintiff's counsel stating that APS Defendants intended to file the Motion and asking Plaintiff's counsel to inform APS Defendants whether Plaintiff would oppose the Motion. Apparently, Plaintiff's counsel did not respond to the email. In the Motion, APS Defendants stated that they "attempted to determine whether this motion was opposed prior to its filing. Neither counsel for Plaintiff … responded to APS Defendants' inquiry." (Mot. at 1.)

In the Response, Plaintiff contends that neither of Plaintiff's attorneys, Dori Richards or A. Blair Dunn, received Mr. Robles' email.[4] APS Defendants admit that Ms. Richard's email address had a typographical error. (Reply Ex. B (dorierichards@gmial (sic) .com).) However, on Mr. Robles' email, it appears that A. Blair Dunn's email address is the same as the email address in the Court's records. (*Id.* (abdunn@ablairdunn-esq.com).) Based on this evidence, the Court finds that APS Defendants complied with Local Rule 7.1(a).

Next, Plaintiff argues that APS Defendants failed to inform the Court of the legal basis for the Motion. However, the Motion clearly states that it was brought under the summary

---

[4] In the Response, Plaintiff's counsel stated that a word search of their email was performed using the case number, Mr. Robles' name, Mr. Robles' co-counsel Taylor Rahn's name, and County counsel Brandon Huss's name. The word search yielded no indication that Plaintiff's counsel received Mr. Robles' email.

6

judgment procedural standard, and the Motion clearly articulates the legal bases for dismissal of Counts Two and Three.

Finally, Plaintiff maintains that APS Defendants are not entitled to seek summary judgment dismissing her Count Three claims because the Court has already denied a motion to dismiss Count Three based on the statute of limitations. However, the legal standards applicable to Rule 12 motions to dismiss and Rule 56 motions for summary judgment are "drastically different[.]" *Crumpley v. Associated Wholesale Grocers, Inc.*, No. 16 CV 022980DDC-GLR, 2017 WL 1364839, at *1 (D. Kan. Ap. 13, 2017). *See Wade v. Regional Director Internal Rev. Svc.*, 504 F. App'x 748, 752 (10th Cir. 2012) (unpublished). "When a defendant files a motion to dismiss, the court accepts the plaintiff's well-pleaded facts as true and construes them in light most favorable to him. At summary judgment, however, the legal standards are different. The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact." *Id.* In short, the denial of a motion to dismiss does not preclude a subsequent motion for summary judgment. *Id.* APS Defendants have presented evidence that shows Plaintiff and M.B. were represented by counsel immediately after the incident. This changes the analysis of whether applying the two-year statute of limitations would violate M.B.'s due process rights. The Court concludes that APS Defendants are not precluded from arguing on summary judgment that Plaintiff's claims in County Three are barred by the statute of limitations.

      B.      Count Two: Fourth Amendment Claim

In Count Two, Plaintiff asserts that the APS Defendants "unlawfully used excessive force against M.B. unreasonably without probable cause to do so, harming M.B. both mentally and physically." (FAC ¶ 85.) And Plaintiff alleges that "[a] law enforcement officer's use of

excessive force constitutes a seizure within the meaning of the Fourth Amendment." (*Id.* ¶ 86.) The APS Defendants argue that M.B. was never seized within the meaning of the Fourth Amendment because, according to the averments in the FAC, M.B. did not stop in response to Officer Dennis' alleged tasing.[5] Instead, after the alleged tasing, M.B. continued to run until he reached Ms. Holtz's car.[6] (Mot. UMF 21; FAC ¶¶ 51, 53.)

"The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated….' This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Terry v. Ohio*, 392 U.S. 1, 8–9 (1968). However, to establish a claim for violation of the Fourth Amendment through excessive force, a plaintiff must show both that a "seizure" occurred and that the seizure was "unreasonable." *Brower v. County of Inyo,* 489 U.S. 593, 599 (1989). A seizure occurs only when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]" *Terry*, 392 U.S. at 20. In other words, even if an

---

[5] Plaintiff attempts to dispute APS Defendants' argument that "M.B. did not stop after he was allegedly tased by Officer Dennis, but instead entered Ms. Holtz' vehicle." (Mot. UMF 21 at p. 5.) As support for UMF 21, APS Defendants cite the FAC at p. 8. The FAC alleges that Officer Dennis "utilized a taser on MB[]" and that "Ms. Holz yelled to the minor child, who eventually ran to her car." (FAC ¶¶ 51, 53.) There is no allegation in the FAC or in the Response that M.B. stopped after Officer Dennis allegedly tased M.B. Even with inferences favorable to Plaintiff, that M.B. was emotionally traumatized by the tasing, the Court cannot infer from the allegations in the FAC and from the arguments in the Response that M.B. was seized as a result of the tasing. Instead of arguing that M.B. was seized, the Response merely argues that no inference can be made that M.B. "was not effected (sic) by the tasing." (Resp. at 12.)

[6] Alternatively, the APS Defendants argue that Plaintiff's allegations that Officer Dennis tased M.B. are blatantly contradicted by the physical evidence. The FAC alleges: "Defendant, APS employee Dennis, then utilized a tazer (sic) on MB." (FAC ¶ 51.) And, "[M.B.] informed Plaintiff Gutierrez that Defendant Dennis shot 'something at me and I saw wires.' The wire hit and shocked MB on his leg." (FAC ¶ 55.) APS Defendants submitted the affidavit of Thomas Munsey, a certified Master Instructor for TASER International. (Mot. Ex. A.) Mr. Munsey testified that it is impossible for a person to see the wires deployed from a taser and it is impossible for only one wire shot from a taser to shock a person. (*Id.* ¶ 11.) In response, Plaintiff requests additional discovery into the bases for Mr. Munsey's opinion to allow Plaintiff to properly respond to this evidence on summary judgment. APS Defendants concede that if the Court rejects their argument that there was no seizure, APS Defendants would not oppose allowing Plaintiff to engage in limited discovery related to Mr. Munsey's opinion. Because the Court concludes that even if M.B. was tased there was no seizure, the Court need not rely on Mr. Munsey's opinion and additional discovery will not be necessary.

officer uses excessive force, there can be no seizure when a person fails to submit to the officer. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) (holding that chasing a juvenile suspect on foot was not a seizure); *Broward v. Inyo County*, 489 U.S. 593, 597 (1989) (holding that car chase which ended in suspect's crash into a barricade was not a seizure). Similarly, the Tenth Circuit has determined that a person is not seized within the meaning of the Fourth Amendment when the person does not submit to an officer's use of force, including deadly force, or show of authority. *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010) (concluding that a deputy did not effect a seizure under Fourth Amendment by shooting a fleeing suspect, who did not stop even momentarily); *Reeves v. Churchich*, 484 F.3d 1244, 1252–53 (10th Cir. 2007) (holding that there was no seizure where plaintiffs failed to submit to officers who brandished weapons and ordered plaintiffs to "get down."); *Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1994) (ruling that officer who shot his firearm at a helicopter while it was taking off did not seize the passenger and pilot).

In *Brooks*, even though the police officer fired his weapon and struck a fleeing suspect, the suspect did not stop and was not arrested until three days later. 614 F.3d at 1215. The officer claimed he was entitled to qualified immunity from the suspect's claim of excessive force because the officer's gunshot did not constitute a seizure. *Id.* at 1217. The Tenth Circuit agreed that the officer did not seize the suspect:

> [W]e agree with the district court's assessment Deputy Gaenzle's gunshot may have intentionally struck Mr. Brooks but it clearly did not terminate his movement or otherwise cause the government to have physical control over him.

*Id.* at 1224. Likewise, even if Officer Dennis deployed a taser that struck M.B., no Fourth Amendment seizure occurred because M.B. continued running to Ms. Holtz's car. As a matter of

9

law, M.B. was not seized within the meaning of the Fourth Amendment, and the Court will grant summary judgment dismissing Plaintiff's Count Two claim against APS Defendants.

        C.      Count Three: NMTCA Claim

In Count Three, Plaintiff asserts claims under two sections of the NMTCA: NMSA § 41-4-6 and § 41-4-12.[7] A plaintiff must bring an action against a governmental entity or a public employee under the NMTCA "within two years after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file." NMSA 1978 § 41-4-15 (A). The incident occurred on September 30, 2014, but the Complaint was not filed until September 25, 2017. The APS Defendants argue that Plaintiff's claims are barred because they were brought after the expiration of the two-year statute of limitations. New Mexico courts, however, have found that in some cases involving injuries to minors, application of the two-year limitations period violates due process. Because M.B. was 13 years old when the incident occurred, the Court must determine whether, under New Mexico law, application of the statute of limitations would violate M.B.'s due process rights.

In *Jaramillo v. Board of Regents of the Univ. of N.M. Health & Sciences Center*, 2001-NMCA-024, ¶ 10, 130 N.M. 256, 23 P.3d 931, the New Mexico Court of Appeals held that the application of the NMTCA's two-year statute of limitations violated the due process rights of the plaintiff's son, who was injured as an infant: "[A]s a matter of due process, a child who is

---

[7] Section 41-4-6 waives governmental immunity for "damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." Section 41-4-12 waives governmental immunity from "liability for personal injury, bodily injury, … resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties."

incapable of meeting a statutory deadline cannot have that deadline applied to bar the child's right to legal relief." *Id.* The New Mexico Supreme Court applied *Jaramillo* to a case involving the sexual abuse of an 8-year-old child in *Campos v. Murray*, 2006-NMSC-020, ¶ 4, 139 N.M. 454, 134 P.3d 741. Importantly, in *Campos,* the New Mexico Supreme Court noted that the due process determination was a fact-specific inquiry and stressed that age was not the sole deciding factor. *Id.* ¶ 10. "[T]here can be factual situations, such as a teenage victim who has legal representation, where 'it is reasonable to expect' a child to be able to meet the requirements of the notice provision or the two-year statute of limitations." *Id. Cf. Erwin v. City of Santa Fe,* 1993-NMCA-065, ¶ 10, 115 N.M. 596, 855 P.2d 1060 (holding that a teenager who retains counsel is capable of complying with the NMTCA ninety-day notice provision).

The undisputed facts lead the Court to conclude that the application of the NMTCA statute of limitations to Plaintiff's claim does not violate M.B.'s due process rights. M.B. was thirteen years old at the time of the incident; and although M.B. is autistic, he and Plaintiff immediately reported the injury and sought medical attention for M.B.'s injury. (*See* Resp. Ex. 1 medical report dated Oct. 1, 2014). More importantly, during the investigation of the incident in early October 2014, Plaintiff represented to investigators that she and M.B. had retained counsel Nancy Simmons, an experienced civil rights attorney. (*See* Mot. Ex. C, D). Later, Plaintiff and M.B. retained attorney Frances Crockett, who timely submitted a notice of tort claims. Following the lead of the New Mexico Supreme Court, the Court holds that applying the two-year statute of limitations to bar this claim does not offend due process because M.B. was "a teenage victim who [had] legal representation." The Court will therefore grant summary judgment in favor of APS Defendants and will dismiss Count Three.

IT IS ORDERED that APS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. I: DISMISSAL OF PLAINTIFF'S FOURTH AMENDMENT CLAIM ON THE BASIS OF QUALIFIED IMMUNITY AND DISMISSAL OF PLAINTIFF'S NMTCA CLAIM BASED UPON THE STATUTE OF LIMITATIONS AND LACK OF EVIDENCE (Doc. No. 49) is Granted, and Counts Two and Three will be dismissed as to the APS Defendants.

/s/ James A. Parker
SENIOR UNITED STATES DISTRICT JUDGE